The first is No. 23-2033, Rideshare Displays v. Lyft. May it please the Court, RSDI's appeal of the original claims that the PTAB erroneously held unpatentable, I want to begin with the PTAB's finding that the Lancet discloses the mobile communication device associated with the driver of the vehicle, which is not supported by substantial evidence. If this Court agrees, then it should reverse the PTAB's holding of unpatentability as to Claims 1 of the 525 patent, Claim 2 of the 199 patent, and Claims 1-5 of the 417 patent. Each of these claims only had, by the PTAB, a basis of unpatentability based on either the Lancet alone or the Lancet with Kemmler, and nobody is alleging that Kemmler discloses this limitation because Kemmler is a driverless system. So all of the claims require that there is a specific device that is associated with a specific entity, and these associations remain constant throughout the system or method that's claimed. One requirement is that there is a mobile communication device associated with the driver of the vehicle. Now what the PTAB is relying on for this disclosure in the Lancet is just a minor embodiment that's given a total of five lines of disclosure. And what it says is, as part of the dispatch procedure, the service provider transmits the dispatch information to a mobile computer in taxi car 118. And all the mobile computer then does is, quote, manage the two displays of the Lancet by popping that icon up on those two displays. And I want to quickly just say that for claim two of the 199 patents, the PTAB actually provides no basis for finding this limitation met in the Lancet. All they do is say, we don't agree with patent owners' arguments. They run through what they are, say they don't agree, and then they say, we therefore find that this limitation is disclosed. So not only is that not substantial evidence, that's no evidence. But with regard to claim one of the 525 patents and claims one through five of the 417 patents, what they say in their analysis for these claims is not that the Lancet actually discloses the mobile computer being associated with the driver of the vehicle. What they say is the mobile computer is in the taxi, so it's associated with the taxi. That's right. But then they go on to say the driver's in the vehicle, so the driver's associated with the vehicle. Isn't the term associated fairly capacious with a little bit of a transitive property? Yeah, that's what they're doing. They end up doing a transitive property. Why is that wrong with a word like associated? Right. So it's wrong because, first of all, if we put this in the context of what the Lancet system is, if you look at the figure of the Lancet, and that's Appendix 338, this is a taxi system, right? So what's important in this system is the central server of the taxi. That's shown in Figure 1. And then the rider and the rider's device, that's shown in Figure 1. They're standing there holding their cell phone because that's how they ordered the taxi. And then what's important is the vehicle with its two displays, and that's what's shown in the Lancet. What is not shown anywhere in the Lancet is the driver because the driver isn't important to how this system actually operates. And the mobile computer isn't shown at all in Figure 1 because it's, again, this blip, but it's disclosed like the displays, which are part of the taxi. And so it's not a fair reading of the Lancet to say, just because we can say the word associate will allow us to take this out several, you know, several iterations, that the Lancet fairly is disclosing a mobile computer being associated with the driver. Well, Lancet's mobile computer is connected to a dashboard display, right? And so information that comes into the mobile computer gets displayed on the dashboard. And then the taxi driver obviously can see and interact with the dashboard display in that way. And so I guess in that sense, there is arguably some level of connectedness between the taxi driver and those components, as opposed to, I don't know, the axle of the taxi cab, that's associated with the driver. You know, that's a further stretch. But there's something else going on here that might bring the taxi driver closer to that mobile computer through the dashboard display in such a manner that maybe it's not unreasonable to say that, in fact, the mobile computer is associated with the taxi driver. So in response to that, Judge Chen, I want to just say the PTAB, nor Lyft, has argued, and PTAB hasn't found, that it's the combination of the display and mobile computer that satisfies this limitation. They've only said it's the mobile computer. But also, neither of these things are associated with the driver. The display is disclosed as being a dash-mounted display. It's part of the vehicle. And we know that the specification of the patents that issue define mobile communication device as being any portable wireless device. That dash-mounted display is not disclosed as being portable. Neither is the mobile computer. And so both... Why does Valenset say mobile? I'm sorry? Why does Valenset say mobile for mobile computer? So I think there's a difference between mobile and portable, right? Like mobile, it's moving because the vehicle's moving. Portable denotes that it can be carried. Maybe.   Okay. So for at least these reasons, I'm running out of time here. I would say that the PTAB has not shown by substantial evidence that there is this limitation. And you will have the six minutes for the two things you will do during that. Yes, you're next. I think, Your Honor, I may have pleased the court. I'll begin with the Valenset issue, but then I want to move to the cross-appeal as well. With respect to this Valenset disclosure... Can you speak up a little bit? Sure, louder. Yes, happy to do that. With respect to this Valenset issue, I think it's important to note that, you know, here the patent owner is just challenging on substantial evidence review, the evidence that the board is relying on to make its factual findings. If you read the board's opinion, it will be clear that the board explicitly discredited the patent owner's expert testimony. They also criticized the patent owner for misrepresenting our expert's testimony. And they found that Valenset, as is taught in the actual disclosure of Valenset itself, has a, quote, driver dashboard display connected to this mobile device that's in the car. So it's clear that what the car has is a driver computer. The board was perfectly entitled to make that factual finding, which it did, for instance, on page 182 of the final written decision. Was there a request for a further construction of associated or some other term? Neither party explicitly asked for any such explicit construction, Your Honor. And the board appeared to be applying the plain meaning correctly because associate is a broad term. Would you say that the taxi car's muffler is associated with the taxi driver? Yes. I mean, it wouldn't be necessary here. I mean, it's associated with the driver because the driver is in control of the car. Yes, I would. But this is obviously much more direct because here there is literally— Is the gasoline in the gas tank associated with the taxi driver? When it's in the gas tank, yes. I mean, I don't see any reason why it wouldn't be associated with the driver at that point. But again, here we have a—literally, the reference calls it a driver dashboard display. It's clear that the driver is interacting with this computer directly, just as he would be interacting directly with the gasoline if you were to pump it into the car at that point. So I think the answer is yes. But just to get back to your question, Judge Tronto, about the claim construction issue, it's also useful to note at page 142 of the record, the board also criticized Patent Owner's argument as being inconsistent with the specification itself, which describes mobile communication devices broadly. So to the extent there was any sort of claim interpretation happening there, it would have been with respect to this mobile communication device, which they found was a broad term and could cover the driver display. Unless there's any questions about that, I want to turn to the cross-appeal on the amended claims. I'm also happy to address any other appeal points that the court has questions with, but let's turn to the cross-appeal. And let me start with the subject matter eligibility issue under Section 101. Can you—I would prefer, at least, if you started with written description, which is not quite, but something like a one-paragraph issue. A one-paragraph issue. Paragraph 30. Paragraph 30, yes, in the specification. That's the bottom of column 5, top of column 6. Correct, correct. So with respect to the 112 issue, I mean, our argument is essentially that the board made a mistake, either because it found support in paragraph 30 for this claim element that really wasn't there, or to the extent that they were correct, and what's in paragraph 30 is sufficient to teach this claim element, that that same disclosure is in Kimbler. The prior art that we were asserting renders this claim invalid. So the board's reasoning is just incoherent in our view. Either—it's either the case, if they're right that there's enough support there, then the prior art invalidates the claims. And if, as we think, they're wrong, but that description is not sufficient, then the claims obviously are not supported and should not have been allowed. That way of making the point suggests, in my mind, a remand. I assume you want more than a remand, and so you really ought to plunk down one way or the other on what you think that paragraph means. What paragraph 30 means? Yeah, so in our—well, I think we are explicit in the brief. We don't think paragraph 30 has sufficient support for what's required here, because, again, we think—you know, the board obviously cited several other paragraphs, all of which have to do with the signal itself and not the actual indicator. Just get to paragraph 30. Yeah, so paragraph 30, there's one sentence in paragraph 30, which is, alternatively, the vehicle identification system may be adapted to allow the driver to enter a command on the driver's mobile communication device so that another code or indicator or other indicator can be generated for the next rider who's going to share the same vehicle. That's the entire sentence, I think, that would support purportedly the board's conclusion here. But it's useful to note, nothing in that sentence describes this indicator being generated by the central controller as the claim requires. And in the yellow brief, RSDI admits that these claims require that this indicator be generated not by the driver's device but by the controller up in the central controller. Substitute claim 29 requires the indicator to be generated by the controller? Well, that's what they say in their yellow brief. No, I mean, let's just look at the claim together. Yeah, yeah. What does it say? It says, I thought substitute claim 29 said... I mean, 29B is the generating by creating an indicator in the dictatory signal that in response to receiving the notification signal. And that notification signal itself is received... By the driver. Yeah, so that is... I thought your principal point was not the one you are now making, but rather that this one sentence, which is the one thing that talks about creating an indicator, does not say, as claims do require, that the indicator be created in the substitute claim after a notification symbol when you're close to the second rider. That's what we're talking about. Correct, correct. And I guess I was taking this sentence with the sentence that came before it as indicating that as the sentence begins, alternatively, this is an alternative to sending a notification signal at all. No, I agree, and I think two things. I think that's true, but also that sentence itself has nothing to do with the presence of the second rider near the vehicle. It just says, now I'm going to pick up a second rider, so I'm going to press a button that generates an indicator. Right, that gets to Judge Toronto's point. With the alternatively word in there, it sets off two different embodiments. Embodiment one, when the driver is close to the passenger, send a notification signal to the car, and then the car will generate an indicatory signal, just like in all the other embodiments. Alternatively, instead of doing all of that, just have the taxi car generate a code and send that out. And so in either alternative, one component of the claim is missing, either the notification signal or the generation of indicator at the taxi car. Yes, I mean, I think we're in complete agreement, and that's the argument we made repeatedly to the board, that none of these disclosures that the board relies on. And what the board's analysis arguably looks like is it removed the word alternatively from this paragraph. So you have a notification signal sent from the controller to the car when the car is close to the pickup, and then after that, continuing on, removing the word alternatively, the system can be adapted so that the driver's phone can generate a code. I mean, that is certainly a plausible explanation for what the board did. I'm not going to speculate as to whether they just ignored the word alternatively. Either that, or they forgot how they interpreted indicatory signal earlier to not necessarily require the generation of a code at the same time. Perhaps, yes. I mean, I don't know which it is, but either way, as we say, we think the board erred, and there was no 112 support for these claims. I'm going to talk about 101. I'm happy to talk about 101, unless the court has any other questions. So with respect to 101, these amended claims to us, I think, are just sort of prototypical invalid claims under 101. They explicitly recite a mental step performed by a user, which is what the claims are directed to, the mental step of identifying your taxi by matching some indicator on the taxi to some indicator that's associated with the ride on your phone. What the board did to overcome that, and it seemed that the board was agreeing with us, because they did find that there was judicial exception under the PTO's guidelines, but the problem is that the board went on to apply this three-step subject matter eligibility test that the PTO applies. Why don't you just ignore the guideline structure, which is confusing and is not governing, and just talk about how you think it should be analyzed in terms of our case law. Absolutely. So it's identifying after a series of communications, a carefully structured series of communications to solve a problem of trust when somebody's about to get into a stranger's car. Okay. Is that eligible or not? I would say no, but I don't even think that's what's going on here. I think these are just very common sense recitations of sending signals so that the user can identify their dispatched taxi, and those are the prototypical examples of things that are not subject matter eligible under Alice and this court's case law. This is not a case like the Deere holdings or the other cases where there is arguably some technological solution to a technological problem. And, you know, I know the Patent Office yesterday. This claim has phones and a display.  Not a controller. It's got signals. It is using mobile computing technology that's existed for a very long time to solve a human problem of allowing you to match a taxi. Judge Andrews, in the district court case, and we cite this in the appendix, noted in his short opinion on this point that it looked to him very much like a shark. I guess you're saying all of those things that I just itemized are just merely conventional tools to carry out an abstract idea and there's nothing going on in this claim that even hints at improving a computer or networks or anything like that. That's right. There's no improvement to computing. There's no improvement to mobile computing. They're using mobile computing devices exactly as mobile computing devices are known to be used. They're described that way in the specification. There's nothing unconventional to describe in the specification. There's nothing unconventional. If a passenger prearranges a car service by calling in, saying I need a car at the airport at 3 p.m. on this day, and says my name is passenger X, and the car drives up and holds a sign that says I'm here for passenger X, that's what this is doing, but doing it with phones over a network. That's exactly right, Your Honor. And that's exactly my point. That's what Judge Andrews was saying when he made an analogy to the Seinfeld episode where George steals someone's car at the airport by saying he's the person whose name is on the sign. So it's exactly right. This is O'Brien? Yes, exactly. The O'Brien episode. So step one, I think it's clear there's nothing new there, and in step two there's really nothing in the claims that they're even pointing to arguably as meeting the subject matter. I mean, it's just using the phones and the capacity of the phones they have to talk to each other, but it doesn't even really tell us how the phones do it. Are they using GPS? Are they using some other ways that the phones identify? It's the idea of using the phones through some kind of networking or electronic signals to show some kind of matching signal.  Correct. Yep, that's right. Unless the Court has any further questions, I'm happy to reserve the time. Okay. We'll have your rebuttal time. Ms. Dawson, you're next, right? I'm sorry? You're next, yes? Am I up? You're next? I'm next, yes. Yes, okay. You're splitting time with PTO? Yes, three minutes. All right. On 101. So I guess I'll jump to written description and address what you were talking about with the LIPS Council. In that Paragraph 30, what is disclosed, the Patent Office did read, to be all one potential embodiment. And I understand you're focusing in on the word alternatively, but I think what the Patent Office was doing, and it's supported by substantial evidence within this disclosure at Paragraph 30. And first of all, Paragraph 30 is still referencing System 10, which is the main system for just having one rider. And so all of those elements would apply here as well. But what Paragraph 30 says, and what the PTAB kept saying to lift throughout the briefing, is you're only focusing on this one sentence within Paragraph 30, but it's the entirety of Paragraph 30. And the PTAB was reading that as one potential embodiment. And what it says is when the first rider gets into the vehicle, it deletes the indicator associated with that rider. And then it generates a notification signal, or can generate a notification signal for the second driver when they're close to the second driver. And then, yes, it says alternatively. But that's kind of the big deal. Right, right, that they can generate another, the driver can generate another code. But what's happening here, and I think what the PTAB is reading fairly in, is the notification signal is still sent. But normally that notification signal automatically sends the driver's device the new indicator and the signal for the indicator. But instead, because we have multiple different riders, it allows for a different embodiment where they get the notification signal and they can just enter a command to get the new generated indicator. I got a little lost there in your explanation. My understanding of this patent is that what the controller is sending to the taxi car is a notification signal, right? And then the taxi car generates an indicatory signal, right? That's what the claim calls for. The mobile computer, mobile computer.  Yeah, of the driver. And I thought I just heard you say that normally what happens is the controller sends not only a notification signal, but also an indicatory signal. Oh, I'm sorry. That's not right. No, what the PTAB is saying and what the disclosure is, is that, and they're relying on these other paragraphs to say this, but it's the notification signal that activates the driver's phone to put up the indicatory signal. So the notification signal comes, that activates their phone to create the indicatory signal and indicator. And so instead, in this embodiment, because we have multiple riders, the driver can just enter a command to get that new indicator for the second driver, or second rider, excuse me. So I don't understand. What is your view of what work is the word alternatively doing in the middle of the paragraph? So the alternatively is in, normally the notification signal activates the driver's phone to create the indicatory signal. The alternatively is instead of that just popping up, they can enter a command to say give me that new indicator now for the second rider. So therefore, in this alternative, there is no requirement for a notification signal to be sent to the taxi driver's mobile device.  So the notification signal is still sent because that says you're within a predetermined location of now the second driver. But the alternatively is instead of, because of receipt of the notification generating automatically because it's activated the driver's phone, the indicator, they can enter a command once they receive the notification to get that second signal for the new passenger. How is that different from how the system ordinarily works? I'm sorry, how is that different? How is what you just described different from how the system ordinarily works? Well, so normally the phone is activated with the receipt of the first notification signal. So it's already activated. Now we have a second passenger, so it doesn't need to be activated again. They get the notification signal, so they hit the enter command to get that new indicator. It sounds like the taxi cab driver's phone is going to be generating an indicator, indicator, indicatory signal in response to receiving a notification signal in your view. And if that's true, then that's really no different than how the system ordinarily works because the system ordinarily has the taxi cab driver's phone generate an indicatory signal in response to receiving a notification signal. It's the same thing. So again, the alternatively word isn't doing anything. Yeah, the alternative is, so normally the notification signal is activating the phone. The driver doesn't have to do anything with the first time that that happens. It just happens that the now indicatory signal representing an indicator happens. This embodiment is because now we have another rider, and so the alternative is now they can enter a command because it's already been activated. So if we could just get to 101 really quickly. Yeah. Why isn't this just the abstract idea of helping two strangers find each other and just using phones and a display in order to do that? Yeah, the whole key to this patent is trying to provide security within this network system so that everybody knows that the right person is getting in the right vehicle, and that's done in this technological. I don't understand that at all. What do you mean? How does it provide security by the network system? All this is doing is letting the phones talk to each other, and then it sends up a signal so the passenger knows they're getting in the right car. So the way that it does it is by first sending that notification signal only at a specific time when the car is close to the rider, and only in response to that at that time creating the indicator and then displaying it. So the indicator is only existing for a very short period of time. This sounds no different than holding up a sign with somebody's name on it where they didn't want to give their name a code that they can look at. Well, it is different because how would... I mean, it has to be a unique indicator. It can't just be their name. Okay, what about this hypothetical? What if the claim were a little different, and it was more about a system, again, of a would-be passenger trying to order a car, and the system, there's a passenger. She's at the airport. Her name's Jenny, and she calls the dispatcher and says, I'm at the airport. I need a car. Dispatcher looks on his big board map and sees that there is a cab driver within a mile of the airport, calls the cab driver and says, you need to pick up Jenny at the airport, and here's her number, and then the cab driver drives to the airport, and he's got a whiteboard, and it's attached to his window, and he writes down Jenny's number on the whiteboard and then calls Jenny and says, hey, I'm coming to get you, Jenny. I've got your number on my whiteboard, and your number is 8675309. What I just described, is that patent eligible? I don't know if that is. It's got phones? It's got a whiteboard? Or is that just a method of organizing human activity, just using available technology for their normal conventional purposes? I don't know if that is, but I know that the present substitute claims are patent eligible because of the fact that the indicator is created at the time that it's close to the rider, and that's when it's created. That's my example. The taxi cab driver wrote on the whiteboard her phone number. But it's a unique indicator. It's disclosed as being a code like that. It's using the basic capacities of these phones to do what the phones do, but the idea for this is so that the passenger can identify that they're getting into the right car. That's not an eligible idea, and using conventional computer equipment and conventional telephones to accomplish that is not eligible. Except for this court's holdings in DDR and BASCOM that says that even if it's just... Those cases involve improvements to... in something that's specific to the computer environment. Everything we're talking about here, this is not to make the phones work better with each other. This is to use that technology to enable human interactions. So there are different cases. The end point of this is to generate a signal for human consumption, right? The end point of this is to... Can you just answer? That's a yes or no question. The end point is to generate a signal for the passenger to realize that they're getting in the correct path. Yes? Yes. That's not a technological problem. But it's a technological solution to it to ensure that there's this two notification... or this two signal... There's lots of technological improvements to the way things were done before phones and computers that we found ineligible. In fact, even things that were physically impossible before computing power that were still just general abstract ideas that somehow became possible due to computing power aren't eligible. That sounds a lot like that to me, that you're using some... But this one was possible before using hand-printed cards and phones and calling people. Well, I'm not sure that any of these... In the prior art human example, that a driver... And even Lips' example of this in their briefs is that a driver is going to wait to write down a user's name when they get too close to the rider. But that's super unsafe and not actually ever happened, right? But it's only saying that because it can't meet this human method of doing it, can't meet the limitations that say we're only generating the first signal when you're at a close proximity to the rider, and then the indicator is created only then to make sure that we don't have an indicator existing for a long time that could be tampered with so that people could intentionally have somebody get into the wrong vehicle. Thank you. I'm here for the government. Thank you. Good morning, Your Honors, and may it please the Court. I want to address this Section 101 issue. The reason that these claims are eligible under Step 1 of ALICE is because they do provide a technological... Under Step 1? Under Step 1. I thought the Board found that they weren't eligible under Step 1 and had to get to Step 2. No, so the Board... Oh, is this your nonsensical Step 0, Step 2A stuff? So the Board found that they were eligible under Step 1. So much like this... But they refer to it as Step 2. Much like this Court's precedent and this Court's decisions in Section 101. What the Board did was first look at the claims and determine if any of the limitations recite a judicial exception. And here, one of the limitations did. One of the limitations recited a method of organizing human activity, as Judge Chen recognized. These claims... But let me step back. One of the limitations. Do you think that these claims are not directed to an abstract idea? That's correct. Not as a whole, because the Supreme Court's precedent and this Court's precedent require that... What are they directed to? What are they directed to? They are directed to a technological... No, you can't mount... They're just generic things that keep them out of an eligibility problem. What specifically are they directed to that's not an abstract idea? An improvement to internet-based ride-share technology. That is what they are directed to. How? How? By providing, as my friend indicated, by providing these specific generation... Is the internet required here? Well, the phones... Just mobile communication devices. It's a mobile communication device. So the internet is not actually required. Well, the way that you are accessing the device is through the internet, right? It's kind of like an Uber app. Where's that in the claims? That's not in the claims. It's not in the claims. You can do all this by text message. It's not in the claims. You can do it all by the phone, but the signals are being sent through a controller, right? And through a network. A network is required. Some kind of... That's a different... Some capability for the controller and the phones to be generating these notification signals at a predetermined time. What's the improvement in the network or the computer or anything that could remotely be regarded as technology? So the improvement is not in the individual components. No, no. Don't tell me what it's not. Tell me what it is. Because I've been waiting and waiting and waiting for somebody to tell it to me. So now's your chance. The improvement is in providing a more secure ride share technology service. That's the result. How do you... What's the means? What is the technological improved means of accomplishing the result? The means of accomplishing the result are these sequence of steps. They're very specific steps. Which sequence of steps? Just reciting the entire claim and then automatically, voila? Well, the generation... Do you deem it to be an improved technical means? The generation of a notification signal when the driver and the rider are a predetermined distance from each other. The generation of the indicator and the generation of that code on all of the devices. It's generated... The airport pickup example. So the airport pickup. Thank you for reminding me about that hypothetical. The airport pickup hypothetical. In that scenario, while the rider may have information regarding which car to get into, the driver has no way to assess that that rider is the rider that they are picking up. They're fully trusting the rider to be an honest person. You don't need these claims to do that. When you call the car service in advance and arrange it, they could also say, in order to make sure our driver knows who you are, you need to print out a sign that has this code on it so the driver can match it. But this process provides all of that within your mobile devices. This process automates it, right? We have never found automating something that can be done with basically pen and paper to be on file. But this is a process that provides a unique code. In your scenario, the person... That's a unique code too. I call up the car service. The car service says, our driver is going to be there in this kind of car. He will hold up a sign with a code on it. You need to hold up a sign with another unique code on it. Here's the code. But this two-way identification system is generated through the technology that is through these devices that are generating these notification signals and indicator signals, which are then displayed on multiple displays. On the mobile devices, as well as a display report. What Federal Circuit case is most similar to the facts of this case that found the claims to be patent eligible? And don't say DDR, or BASCOM, or Koninklijke KPN. I am all too familiar with those three cases. And they don't help. So, other cases that have held that... Which ones? Contour IP holdings, Macro. Those types of cases have held that even though the individual components themselves are conventional, overall the specific steps that are followed provide an improvement to the underlying technology. In Contour IP holdings, there was an improvement to a particular point of view that provided specific... It also involved the generation of signals, the generation of video, and then displaying that video on a display. Those claims are very similar to the claims at issue here. There was an improvement to the underlying technology because of the specific steps that were followed. If there are no further questions... Okay, thank you. So, Your Honor, just to address Contour. Contour solved the problem that was created by the technology in that case, which was a point of view camera that you couldn't see the viewfinder, so there was a technological solution that was recited in the claims there. Here, there is no technological solution. This is just using mobile computing to solve a human problem that has already been practiced for many, many years. Unless the Court has any further questions. Your Honor, can you return for a minute to the written description? Went well? Question, yes. So, at least one way that I think I heard the argument being made is that on what is, in this context, a factual question, even though we're interpreting the patent at issue, the Board reasonably interpreted the paragraph to give a meaning to the term alternative that starts after the notification signal, not before the notification signal, so that the alternative is not to skip a notification signal. It is, rather, that the indicatory signal is created at the behest of the driver's action, as opposed to automatically, electronically, by the device upon receiving the notification signal. Why is that an unreasonable reading of that paragraph? So, the reason that I think that would not be... First of all, it just doesn't parse logically when you read the actual paragraph as a whole, paragraph 30. So, I think if that was the reading, it is not supported by the actual language of paragraph 30. But looking at the text of the actual amended claim, the requirement is that you generate, by creating an indicator, an indicatory signal representing the indicator in response to receiving the notification signal. So, what is the notification signal that's still present that this indicator is generated in response to? There would be no room for that anymore in this embodiment, because it's the driver pressing a button. So, that's why I don't see how you can get to that interpretation of what's in paragraph 30 and say that matches up with what Claim Element 29B now requires in the amendment.  Thanks to all counsel. Case is submitted.